■ In the Matter of QUIN MARINE SERVICES, INC., Petitioner, v WATERFRONT COMMISSION OF NEW YORK HARBOR, Respondent.—Determination of the Waterfront Commission, dated October 20, 1976, denying the application of Quin Marine Services, Inc., for a pier superintendent's license on behalf of its employee William Montella, Jr., unanimously annulled, on the law, and the matter remanded to the commission for reconsideration, without costs or disbursements. Quin Marine Services, Inc. (Quin Marine) applied for a pier superintendent's license. Application for this license must be made by an employer on behalf of a prospective employee (L 1953, ch 882, § 1, art V, par 2) who, in this case, was one William Montella, Jr. Montella had always been employed on the waterfront in the marine carpentry trade. Initially, there were three charges lodged against Montella. We are called upon to review only Charges I and III, which formed the basis for denial of Quin Marine's application on behalf of Montella. Charge I alleged that Montella initially testified that he was not an officer of Quin Lumber, Dunnage and Carpentry Corporation (Quin Lumber)* when in fact Montella was an officer

---

* Quin Lumber and Quin Marine are two separate corporate entities.

of Quin Lumber. Charge III alleges that Montella was an officer of, and financially interested in, Quin Lumber and, together with Lucille Kritikos, he failed to disclose the full extent of his interest in Quin Lumber. The evidence adduced showed that the Montella and Kritikos families had been friendly for years. The Kritikos family operated Quin Lumber for many years. In 1952, when Mr. Kritikos died, Montella, who was an employee of the John W. McGrath Corporation, assisted in the running of Quin Lumber for Mrs. Kritikos. Montella became more involved in Quin Lumber in later years, even giving a loan to Mrs. Kritikos in the sum of approximately $13,000, and signed bank signature cards for payroll purposes for Quin Lumber. The finding that Montella was untruthful with regard to his involvement in Quin Lumber as well as the significance of the signature cards is not sufficient to support denial of the application. The bank signature cards, it was alleged, were signed by Montella but the details were filled in by the bank officer. The hearing officer found that the signing of these cards was sufficient to show Montella's knowledge that he was an officer. The commission, on the other hand, found that the proof on this point was inadequate in view of the fact that the cards were signed in blank. We agree with the commission in this regard. There was, however, a finding that Montella lacked good character and integrity since he failed to reveal the extent of his interest in Quin Lumber; however, there was no evidence showing this interest. The only concrete evidence that could be shown was that Montella loaned Mrs. Kritikos approximately $13,000. Further testimony indicated that this amount was repaid. There was no other showing of any substantial involvement of Montella in the affairs of Quin Lumber. Under these circumstances, we hold that the findings of the commission were not based on substantial evidence and the determination of the commission must therefore be annulled. Concur—Silverman, J. P., Fein, Lane, Sandler and Sullivan, JJ.